Our second case is 20-1162 VDARE Foundation v. City of Colorado Springs and Mr. Kelly for the appellant, you may proceed. Good morning Chief Judge Simcovich. Good morning. Judge Harris, Judge Phillips. Men do not lightly disregard the thinly veiled threats of government officials and it is chiefly on that basis that I'll be asking this court to reverse the order of dismissal and remand to the district court before the proceedings. My name is Frederick C. Kelly and I represent the appellant of the VDARE Foundation, although I would also like to gratefully acknowledge the contributions of the co-counsel Glenn K. Allen on the brief. I'd also like to reserve five minutes of time for rebuttal. The procedural posture of this case comes to this court on a Rule 12-6 motion. I'm sure the standard review is well known to this court. I would note, however, though, it is a heightened de novo here as set forth in the Levington case. The presence of the First Amendment imposes an obligation on this court to conduct an independent review of the entire record to be sure that the decision in order below does not constitute a forbidden intrusion onto the field of the First Amendment. And respectfully, if one turns to page eight of the appellant record, one finds not merely a forbidden intrusion, but an outright depredation. And if there's any question about that. Mr. Kelly, the one mystery to me, I guess, is what Cheyenne Mountain Resort told your client was the reason for the contract cancellation. I didn't see that anywhere in the record. Is there anything that would disclose that? The record sets forth that the cancellation occurred because of the fear of unrest. They followed the marriage statement. That's at record page... Did Cheyenne tell you that? Did Cheyenne tell us that? I don't know if that's in the record. I think it's a fair inference, though, that there was fear of unrest. That's pled at record 11-12. It's also reinforced ironically. Why is that a plausible inference? Because to be left to confront a bang mob is an intrusion, is a real danger. The city itself raised the specter of violence from the UTR rally at pages 20 and 24 of the record. There's no question that that was floating around when the mayor issued his precipitant statement. Well, why do you... The statement has a lot of ambiguity. It says that the city is committed to the enforcement of Colorado law, which protects all individuals, which would include Cheyenne. But you say that this part about support and resources somehow permits a contrary inference. Why is that a plausible interpretation of this statement? May I give you a hypothetical? I take it that's a yes. Let's say we had not a precipitant mayor, but an intemperate judge. We had a case of assault. In his courtroom with maybe a notable defendant. If that judge called counsel to the bar and said, now, I know I don't have authority to restrict who you represent, the kind of clients you take in for your businesses. And frankly, you know me, I'm fair and neutral, and I recognize my obligation to be fair and neutral. I intend to hold the balance nice, clear, and true between the accused on one hand and the state on the other. That being said, Mr. Defense Counsel, I do wish you'd be more mindful of the kind of clients you take in, the kind of men you're willing to represent in your practice. If our judge said that, would any of us have any question as to what his true intentions were? Would we need to draw a strong inference? Why isn't the better inference of this statement that they're not going to declare a V-Day or Memorial Day, or we're not going to provide a welcome wagon for the conference. You go from zero to 100 and say, oh, he's saying that the city is not going to respond to a 9-11 phone call if there's a risk of violence. Why is that a plausible interpretation of a political statement by an elected official? It's plausible precisely because of the context of the UTR rally that's raised by the city. The mayor makes a statement on August 14th. The UTR rally was August 11th through 12th, and he singled out the resort, and he singled out V-Day for hate speech, whatever that means. We take it that means that the mayor really hates V-Day's speech. When he says he's not going to commit any resources to the event, he's sending a message no different than our intemperate judge there, who would say to defense counsel, you will get no support or help from me in this trial. Well, of course, judges we know don't give support or help to anyone. What he's trying to communicate is that you're not going to get a fair trial. Okay, well, that's the hypothetical, but let's stick to this case and the language that's in front of us, and your surmises about that language to follow up what the chief said. The only sentence I see in this two-paragraph release that even hits on anything is, the city of Colorado Springs will not provide any support or resources to this event, and then it goes on and does not condone hate speech. You take that does not provide, will not provide any support or resources to mean we've got mayhem out there at the resort, but the mayor's declared the police shall not respond, which is a huge leap. Instead, when I read that, I say, oh, okay, the police department's not going to be the private security for this event. You're going to have to get your own security. Why isn't that the proper inference? Well, frankly, even if that were the proper inference, if that were the proper inference, that would still be unconstitutional under the Forsyth case. Are you saying that the city has a constitutional obligation to provide private security to all events? I'm saying that the city cannot threaten to withhold basic police protection to an event based upon the content of the speaker. But there you go. There you go with withholding basic police protection, and what that would mean is we have murder and mayhem, and the mayor has said don't respond, and that's not what this language says, but that's what your complaint says, and it says in a number of places that that's what that language means, but I read that language, and I sure don't see that. Well, respectfully, there does not seem to be any other kind of support or resources that a city would be providing. Everyone knows cities don't provide support or resources to private events, so what else could the mayor be conveying, except that Vidaire was disfavored, and that he was perhaps going to follow the path of other irresponsible public officials and allow mayhem to happen? Well, we still need to, is there anything that suggests that the mayor had a conversation with, a direct conversation with the resort? Well, respectfully, I don't think he would need a direct conversation with the resort. If someone issues a press release, it doesn't mean that he's got to send a personal letter fidexing the press release to the recipient. He cited the city, the Cheyenne resort in the press release. Clearly, that's going to get out to them. That's meant to be released to the press at large, to the public at large, and it is also meant to find its way into Cheyenne's hands, regardless of whether or not it reached Cheyenne's hands. Elected officials, they're critical of private organizations, cause groups all the time. I mean, that kind of comes with territory, and they're going to praise some and condemn others. I mean, that's the world we live in, and you're basically creating constitutional liability for more or less garden variety political speech, aren't you? No, that might come with the territory, but the territory is delimited and ends with a threat. Government officials can, of course, comment on public matters. They can comment on controversial matters, but they can't cross the line from commenting on a matter to actually issuing a threat. That crosses a line. It crossed the line in Jackson versus Curry County. It did not cross the line in Gallagher for reasons that are distinguishable, but it certainly crossed the line here. I would also note that the state action test, the nexus test for state action, of course, lacks rooted simplicity, and the courts look for factors such as encouragement, significant encouragement, covert or overt, or coercion. And the mayor himself specifically used the statement, encouraged after singing out Cheyenne Resort. I will take the rest of my time for rebuttal if that is acceptable to the panel. Thank you. All right, counsel. Mr. Lampere. Thank you, and good morning, panel. May it please the court. My name is Eric Lampere. I represent Mayor John Southers in the city of Colorado Springs. Purely private conduct is not actionable under the 14th Amendment. This bedrock, well-settled principle governs this case. The Cheyenne Mountain Resort did contract with VDARE to host its 2018 spring conference. On August 12th, obviously things changed in their eyes. The resort exercising its business judgment, which is entirely its prerogative, decided to terminate the contract. There is no allegations in the amended complaint that any representative on any level from the mayor on down had any role in that decision. How do we know the resort exercised its independent business judgment? Sure. So that is certainly a gap. Not in the complaint, obviously. It is certainly not in the complaint, Your Honor. And I think it's just a reasonable inference, given the circumstances of Charlottesville occurring on the 12th, the mayor's statement on the 14th, and then the cancellation on the 15th, that they exercised their independent judgment. And this is something that we see businesses do all the time. They are concerned about their brand and their relationships, guest experiences, and ultimately the bottom line. And they have to take that into consideration when determining whether or not to maintain a contract with a particular party or not. Well, that may all be true, but why wouldn't that be fleshed out in discovery? And if true, be some re-judgment territory? It could be there, but I think it's more appropriate. And I think we have to look at it at all Twombly and say that it's the plaintiff's obligation to state a plausible claim for relief. And we have to cast aside conclusions and speculation, which this amended complaint is largely built upon. And I would say insofar that plaintiff gave it its best go, we're looking at an amended complaint rather than the initial complaint. And VDARE certainly had the opportunity to ask whether or not the resort was influenced at all by the mayor's statement. There is no allegations in the complaint that it was even aware of the mayor's statement. And certainly I would think if any of us were to have an event or a wedding at a conference center such as the Cheyenne Mountain Resort, we would ask why. And the fact that VDARE is entirely unable to provide that information, it just shows that there's, again, no allegations that the resort was influenced by the mayor's statement. But what did the statement mean when it said it would not provide any support or resources for the event? Sure, Chief Judge. I think you touched on it earlier. And that is, you know, this is no different than the way the city would react to any private event held on private party by private individuals. It asks the question whether or not the city has any role in the event. And the answer quite clearly is no. I look at it as similar to, you know, an abortion clinic in town. Just because there's a possibility that there may be a protest does not mean that the city has to expend resources and have officers out there just for the mere prospect that something bad could happen. And I don't believe that there's any obligation for the city to pledge city resources, police and fire resources, months down the road. We all know that... Don't you think the city has some obligation if there's a credible threat of violence to take steps to improve security? And if they picked and choose which businesses they would provide security to, wouldn't that be a breach of their obligation to treat businesses equally? Yes, that would be problematic if that was actually alleged in the amended complaint. However, it was not. I would say that, you know, the city of Colorado Springs does have an obligation to provide equal protection, certainly. And I think if you look at that sentence, it is followed by a sentence immediately after it that says that the city remains steadfast to the enforcement of laws that protects all individuals. And there's no indication that BDAR is excluded from that. So if there was a credible threat to property, a credible threat to bodily harm, certainly the city of Colorado Springs would do what they needed to do. That language means something. And maybe you can shed some light. We'll not provide any support or resources. When does the city do that? When does the city ordinarily provide support or resources? I think you have to look in circumstances where you have heads of state and dignitaries that come to the city of Colorado Springs. There, of course, there's going to be significant security concerns and the city is going to do additional work to ensure that that happens. And I think it's also brings up another point. If BDAR was asking for a special event permit and they wanted to have a parade down a Colorado Springs street, then the city would have to act in a neutral capacity. But that's not the case here. Instead, this is a private event being held on private property and the city is not obligated to anticipatorily provide and I guess pledge to provide resources and security months down the road. We can look to Watson v. City of Kansas City for the general proposition that there is no right to police protection. Insofar that BDAR is now claiming that there's some equal protection problem here, that was a claim that was brought, dismissed by the magistrate judge, and they did not object to it below. So certainly that is not subject of this appeal now. And so there's really no basis at this point for them to say that there is an equal protection problem with the mayor's comment. Let me, as I understand the claim, it's two steps. One is that a reasonable interpretation of what the mayor said is that it was not going to respond to violence and provide that sort of protection at the resort. And second, that that statement by the mayor put enough fear and was intended to put enough fear in the resort that they decided they couldn't hold the event there. So it's two steps, as I understand. Let's go to the first step. Do you think it is an impermissible inference  that the mayor was saying, you're on your own, we're not going to do anything to protect you from violence there? And in answering that, the statement we've all quoted is preceded by a paragraph in which the mayor makes it clear he doesn't want these people around. We don't have the right to prevent it, but I would encourage local businesses to be attentive to the types of events they accept and the groups that they invite to our great city. And then he says, we're not going to provide any resources. He doesn't limit that. He doesn't say, of course, we'll provide protection. He says, we're not going to provide resources. And the El Paso County Sheriff's Office apparently interpreted it that way too. They said, the county's deputies would not be participating either unless the presence is requested by the Colorado Springs Police Department. So you could read this statement by the mayor otherwise. I don't think it's a summary judgment thing one way or the other, but wouldn't it be a reasonable inference that the mayor really dislikes this group and doesn't want them there and is saying, you're on your own, if they cause problems, you're not going to get any help from us. Isn't that... Explain why that's not a reasonable inference. Not that it's not the best inference, but that it's not a reasonable inference. It's not reasonable, Your Honor, because I think it's entirely subjective. And I would say to Chief Judge Temkevich's point earlier, this is not a situation where there was mayhem happening at the resort and the mayor instructed the police chief to stand down and not provide any type of services. This whole claim or this whole complaint is entirely premised on speculation. And then I think too, in looking at... Why did he make the statement? Why did he say this? What was his purpose? I think his purpose was to appeal to the conscience of business owners. At the end of the day, you cannot hold events like this. No, I don't think so. I think it was exactly as he said, to be mindful, to think about what you do. And at the end of the day, if that's what you choose to do, then that is absolutely fine. But you need to... We're not going to provide any resources to protect you. But we're... Not that we're not going to protect you. We're not going to provide any resources. As the Chief Judge said, we're not going to roll out the red carpet necessarily. We're not going to provide you with the security detail that's reserved for heads of state. But otherwise... I thought the response was by Mr. Kelly, pretty good on that. What do you normally do? Normally, all you do is provide police protection against threats of violence and responding to violence. While Mr. Kelly says in the briefing that there was a credible complaint, there's credible threats, there's absolutely no allegations in the amended complaint whatsoever that detail or describe this credible threat. And we have to remember too, that we are talking about a statement that was issued in August for an event that was going to occur the next spring. So again, this is all speculative. In order to forecast what is going to happen months down the road, it takes quantum speculative leaps in order to get there. And I think as far as talking about the resort and talking about be there specifically, it is okay for a government official, especially elected official, to target particular ideologies. This is not a situation where we have to act neutral. I mean, we are not targeting or threatening trash companies by promoting a recycling initiative. We're not targeting or threatening people that don't believe in vaccines by having a vaccine campaign. And I don't think you're threatening a hate and division by promoting inclusiveness. At the end of the day, I don't see the mayor's statement as being directed at all towards, as a direct statement to be there and the resort as much as I see it as a statement from the mayor, an elected official to his constituency, and really answering this question of whether or not the city of Colorado Springs is going to proactively expend unnecessary resources to a private event. And the mayor says quite plainly, no. But again, he follows that up with a statement that says, we pledge to commit to the enforcement of the law. And if that means that there is something going to ride there, there is a credible threat, then we are going to be there. But again, it is plaintiff's burden at the motion to dismiss stage to allege a plausible claim. And right now, as the district court found, it is nothing more than labels, conclusions, and a lot of speculative leaps. And I think this is something that the court touched on earlier. The government spends a great deal of time urging private parties to change. Ditch your vehicle, choose public transportation, live a healthier lifestyle. The president may ask the nation to pray after a national tragedy. At the end of the day, none of these requests are significant encouragement or coercion. The military- Mr. Blanfield, if the statement said, we're going to refuse ambulance and police services to this event, would that be actionable state action? Again, under different circumstances, your honor, it's possible that it would be. But again, this is not a situation where there has been an allegation of a credible threat, that there has been evidence, or excuse me, allegations that there was some type of violence occurring outside of the resort and that they needed police assistance. In these circumstances here, I see this as no different than an elected official exercising their right under the government speech doctrine to speak about public topics. How does this play into it? To the extent there were trouble out at the resort, it would presumably be because there's protesters and counter protesters, both sides would be deprived of that police protection, not just one side. Does that matter? I certainly think it would matter to everyone. But I mean, at the same time, if we're going to provide, I see that my time is up, I'll just answer the question. But at the end of the day, it speaks to an equal protection claim. And the city has an obligation, certainly, to provide, to treat everyone with an equal hand. But again, that's not the facts that plaintiff alleges, and that's their obligation. Thank you. Thank you, Mr. Lamphere. Mr. Kelly, you had some rebuttal. So I think as it's been adequately pointed out for Judge Phillips and Judge Timkovich, this was not a quantum leap about the threat of withholding police protection. Or if it was a quantum leap, it was apparently one that the El Paso County Sheriff's Office also decided to take after the mayor issued a statement. In fact, at paragraph 13, at record nine of the appendix, one finds that the El Paso County Sheriff's Office was also willing to take that leap, which shows it's really not a leap at all. It's what everyone knew what the mayor was saying. And as to this government speech doctrine, there was no rebuttal from Mr. Lamphere that government speech does not cover threats. That's the Mattel case. Government speech cannot be used to stifle or suppress a point of view that the government disagrees with. So this whole notion that, gee, trying to encourage people against hate and this and that and whatnot, that's something that the government officials do all the time, goes out the window if it becomes a direct threat to withhold police protection. If Mayor Southers wanted the debate to be there, he should have showed up at the conference. Of course, his actions made that conference impossible. And I would also say that this notion that it has to be the resort itself, we gotta know what the resort is doing, is, I think, a red herring. Whether the resort was willing to go forward with a conference or not under the mayor's threat, certainly VDARE should not have been expected to hold the conference anywhere in the city of Colorado Springs. Could an elected official, city council, the mayor, could it, in response to this conference, denounce the sponsors and encourage people not to attend the conference? Would that violate the Constitution? You know, it's an interesting question. I think if there's a lot of controversy, the more proper action is for the government to hold off on anything. But certainly, if they cross the line with issuing a threat, they've gone beyond what any case or any authority says they can do. Mr. Kelly, surely the mayor could say, I don't like this group and I don't think you should participate. That may discourage people. Maybe the resort at that point would say, well, I don't think we're gonna have enough people here  Can't the, is there anything? It strikes me in an event. No, respectfully, I would have to disagree, Judge Hart. And I would disagree because even in a situation like that, the government speech doctrine comes about when the city or a government is doing something like funding a certain message. They wanna promote beef, for example, or they have, you know, they wanna discourage smoking. There's a campaign that's going on. There's not a live controversy where they might have to choose sides. As increasingly in America, we're gonna have to do. I think for any government official, it's improper. It was certainly improper here when they issued a threat that not only the resort took seriously and understood, but the El Paso County Sheriff's Office understood. And by the way, for Judge Phillips and Judge Tinkovich who thought this was a leap, the language is unqualified. He didn't say, we're not gonna roll out the red carpet. He says, we're not gonna provide any services. He raised the issue of services and then he used that unqualified adverb, none, any. He didn't say, we're not gonna roll out the red carpet. There's no services whatsoever, including firing police. But when you say the resort felt threatened, your client is in a unique position to know exactly what the resort did feel because presumably the resort called your client and said, you're canceled. And that would beg a question, why are we canceled? What are we to make that of that, I think reality and a lack of any allegations in the complaint that there was a positive answer for your lawsuit? I think, frankly Judge Phillips, I think you're assuming that the resort would be forthcoming as to what it's- I'm assuming that you would at least ask and that there would be a response. And maybe the response would be, we prefer not to discuss the matter, but that would be alleged in the complaint. Whatever it was. I don't, I think that would be extraneous. And in any event, whatever the resort might've said, if it's not given in discovery and it's not given under oath, it's just not, it's not there. And it's certainly plausible. One doesn't have to be a canny judge to, I mean, go back to Iqbal Twombly. Even if this panel thinks that the allegations are slightly speculative, if they're plausible in any way, they're supposed to go forward so we can conduct discovery. What is your plausible- Explain the inference that the resort canceled the event because of what the mayor said. You have to give something on which to draw the inference. Because- What do you think it is? The allegations of the complaint are that the resort had contact with VDA for five months leading up to the mayor's statement and understood the risks and understood they were a controversial group. And until the mayor made his statement about withdrawing police protection, they were on board. Within one day of his statement, they cancel. And by the way, the mayor indicates that he agrees with the cancellation. He's happy. Could there be anything clearer as to what the mayor's intentions were? He not only makes his threat, but he expresses satisfaction that it carried through. All right, counsel, your time expired. We appreciate the arguments. It's a very interesting and important case and we appreciate your participation today. Counsel, you're excused and the case will be submitted.